1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

8

9   UNITED STATES OF AMERICA,               )   Case No.: 15-CR-2613-GPC
                                            )
10                      Plaintiff,          )   **ORDER DENYING MOTIONS TO**
                                            )   **SUPPRESS CELL PHONE**
11          vs.                             )   **EVIDENCE**
                                            )
12   SOCORRO HERNANDEZ,                     )   [ECF Nos. 31, 36]
                                            )
13                      Defendant.          )
                                            )
14                                          )
                                            )
15   _____       )

16          Defendant Socorro Hernandez ("Defendant") moves to suppress evidence

17   obtained from the initial, warrantless border search of her cell phone, 1st Def. Mot

18   2–10, ECF No. 31, as well as evidence obtained based on a second, warrant-based

19   search of her cell phone. 2nd Def. Mot., ECF No. 36. The United States has opposed

20   both motions. 1st Gov't Opp., ECF No. 34; 2nd Gov't Opp., ECF No. 37. Upon

review of the moving papers and the applicable law, and for the reasons set forth below, the Court hereby **DENIES** the motions to suppress.

## FACTS

On October 2, 2015, at approximately 5:27 p.m., Defendant Socorro Hernandez applied for admission into the United States through the vehicle lanes at the San Ysidro, California, Port of Entry ("POE"). *See* ECF No. 22-2, Ex. A at 3. Hernandez was driving a 1996 Plymouth Grand Voyager and was accompanied by two of her children. *Id.* A Customs and Border Protection ("CBP") Officer subjected her vehicle to a customary search and found several packages wrapped in masking tape concealed in a panel inside the vehicle's trunk. *Id.* A secondary search of the vehicle revealed a total of five packages, containing a total of 2.96 kilograms of methamphetamine. *Id.* at 4. Hernandez was then placed under arrest. *Id.*

Homeland Security Investigations Special Agents Medina and Leon interrogated Hernandez in the POE security office on the same day. *Id.* at 5. During this interrogation, Hernandez denied meeting anyone in Tijuana and denied any knowledge of the drugs in the car. *Id.* After the initial interrogation, the agents searched Hernandez's cell phone and discovered a text message indicating that Hernandez had met that day with someone named "Chava." *Id.* at 6. When the message was discovered, the agents approached Hernandez and told her that she

2

lied about meeting "Chava." *Id.* Hernandez then stated that she forgot to mention

that she met with "Chava." *Id.*

On December 9, 2015, Agent Medina applied for a search warrant to search

the cell phone. ECF No. 34-1. The affidavit's factual justification for searching the

cellphones was that, based on the facts recited above, Medina believed that

Hernandez "likely used Target Telephone to coordinate with co-conspirators

regarding the importation and delivery of the methamphetamine and to otherwise

further this conspiracy both inside and outside of the United States," and that

"information relevant to the narcotics smuggling activities of HERNANDEZ and

her co-conspirators, such as telephone numbers, made and received calls, contact

names, electronic mail addresses, appointment dates, messages, pictures and other

digital information are stored in the memory of Target Telephone." *Id.* at 6.

The warrant described the scope of the search and the statutory basis of the

underlying violation as follows:

> The following evidence to be searched for and seized pertains to
> violations of Title 21, United States Code, Section(s) 952, 960, and
> 963, Importation of a Controlled Substance and Conspiracy.
>   1. Communications, records, or data including but not limited
>      to emails, text messages, photographs, audio files, videos, or
>      location data:
>        a. tending to indicate efforts to import controlled
>           substances from Mexico into the United States;
>        b. tending to identify other facilities, storage devices, or
>           services – such as email addresses, IP addresses,
>           phone numbers – that may contain electronic evidence
>           tending to indicate efforts to import controlled

substances from Mexico into the United States;

c.  tending to identify co-conspirators, criminal
associates, or others involved in smuggling controlled
substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations
involved in smuggling controlled substances from
Mexico into the United States, such as, but not limited
to, stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control
or access to, the subject phone; or

f.  tending to place in context, identify the creator or
recipient of, or establish the time of creation or receipt
of communications, records, or data above.

*Id.* at 10.[1] The warrant was signed by Magistrate Judge Major on the same day the

affidavit was submitted, December 9, 2015. *Id.* at 11. Pursuant to the warrant,

Agent Medina returned an inventory of two copies of compact discs obtained from

forensics with cell phone data to Judge Major on January 13, 2016. *Id.* at 12.

## DISCUSSION

### I.    Initial Border Search

Hernandez argues that the Government's initial warrantless search of her

cell phone at the border was unreasonable. 1st Def. Mot. 2, ECF No. 31.

---

[1] As justification for the scope of the search, the affidavit stated due to the development of
modern technology, "i[t] is not possible to determine, merely by knowing the cellular
telephone's make, model and serial number, the nature and types of services to which the device
is subscribed and the nature of the data stored on the device," since modern cell phones have
many different capabilities, such as calendars, address books, and other "mini-computer[]"
functions, *id.* at 6, and that since many cell phones "do not have hard drives . . . and store
information in volatile memory," not all data can be acquired "forensically," with some devices
requiring "time and labor intensive" manual review, *id.* at 6–7. The affidavit states that the data
analysis will take ninety (90) days. *Id.* at 7.

4

1    "Border searches form a narrow exception to the Fourth Amendment

2    prohibition against warrantless searches without probable cause." *United States v.*

3    *Cotterman*, 709 F.3d 952, 960 (9th Cir. 2013) (en banc) (quotation omitted)

4    (internal quotation marks omitted). At the border, "individual privacy rights are not

5    abandoned but '[b]alanced against the sovereign's interests.'" However, the

6    balance between those rights and interests is "struck much more favorably to the

7    Government" owing to "the long-standing right of the sovereign to protect itself by

8    stopping and examining persons and property crossing into this country." *Id.*

9    (quotations omitted) (internal quotation marks omitted).

10   Hernandez argues that a distinction should be made between "investigatory"

11   border searches and "protecting the United States' sovereign integrity by excluding

12   unwanted persons or things." 1st Def. Mot. 4. However, Hernandez cites no

13   authority to support such a distinction. In *U.S. v. Cotterman*, defendant's two

14   laptops and three digital cameras were seized at the U.S.-Mexico border in

15   response to an alert based on a previous child molestation conviction. *Id.* at 956.

16   After an initial search at the border, in which defendant was detained while a

17   border agent inspected the electronic devices and found what appeared to be family

18   and other personal photos, along with several password-protected files, but no

19   evidence of child pornography, defendant was allowed to leave the border. *Id.* at

20   957–58. However, border agents retained two laptops and one digital camera, and

5

1    then shipped them to Tuscon, Arizona, for a comprehensive forensic examination.

2    *Id.* at 958. The Ninth Circuit found that no particularized suspicion was necessary

3    for the initial border search, where a border agent "turned on the devices and

4    opened and viewed image files" while defendant was waiting to enter the country.

5    *Id.* at 960 (noting that "the legitimacy of the initial search of Cotterman's

6    electronic devices at the border is not in doubt"). However, reasonable suspicion

7    was necessary for the forensic examination of the laptop. *Id.* at 957. The key

8    distinction for the Ninth Circuit lay in the "comprehensive and intrusive nature of a

9    forensic examination," wherein the laptops' hard drives were copied and then

10   "analyze[d] in [their] entirety, including data that ostensibly had been deleted." *Id.*

11   at 962.

12        Hence, the distinction drawn by the Ninth Circuit was not whether the initial

13   border search had an "investigatory" function, but the nature and intrusiveness of

14   the initial border search. Here, the initial search of the cell phone performed at the

15   border appears to have been a non-forensic scan of the cell phone's text messages

16   of the kind conducted in the initial border search in *Cotterman*, rather than the

17   warrantless forensic examination the Ninth Circuit subjected to more searching

18   inquiry, which was undertaken in the present case after the warrant was issued.

19

20

1    Thus, the initial review of the cell phone was not illegal.[2]

2        **II.    Warrant-based Search**

3        Hernandez argues that (1) the search warrant was not sufficiently

4   particularized; (2) the search warrant was either broader than the probable cause

5   upon it was based, or not based on probable cause; and (3) the search warrant did

6   not specify a search protocol. 2nd Def. Mot. 8, ECF No. 36. The Court will address

7   each argument in turn.

8        **a.    Particularity**

9        The Fourth Amendment provides that "no Warrants shall issue, but upon

10   probable cause . . . and particularly describing the place to be searched, and the

11   persons or things to be seized." U.S. Const. amend. IV. This "specificity"

12   requirement has been understood to have two dimensions: "particularity" and

13   "breadth." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir.

14   2009). "Particularity is the requirement that the warrant must clearly state what is

15   sought. Breadth deals with the requirement that the scope of the warrant be limited

16   by the probable cause on which the warrant is based." *Id.* (quotations omitted).

17   Both requirements "serve a common purpose: to protect privacy by prohibiting a

18   ───────────────

19   [2] Hernandez also argues that the Supreme Court's recent decision in *Riley v. California*, 134 S.
     Ct. 2473 (2014), stands for the proposition that "the border search doctrine . . . does not apply to
     searches of cell phones." 1st Def. Mot. 6. However, although the Court did hold in *Riley*

20   that the police generally may not, without a warrant, search digital information on a cell phone
     seized from an individual incident to arrest, the Court gave no indication that *Riley*'s holding
     applied to the border search exception.

general, exploratory rummaging in a persons [sic] belongings." *U.S. v Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990) (quotation omitted) (internal quotation marks omitted).

Hernandez argues that the warrant was insufficiently particular. 2nd Def. Mot. 12. She argues that the warrant's lack of particularity resulted in an unconstitutional general warrant, where "the warrants sought permission to search the entirety of the phone over all time periods of time [sic]." *Id.* However, Hernandez does not point to any specific language in the warrant to support her contention that the warrant is unconstitutionally general.

Courts have generally accepted the proposition that "a search warrant authorizing the seizure of materials also authorizes the search of objects that could contain those materials." *United States v. Giberson*, 527 F.3d 862, 886 (9th Cir. 2008); *see also Andersen v. Maryland*, 427 U.S. 463, 482 n.11 (1976) (recognizing that "in searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized"). The Ninth Circuit has recognized "heightened specificity concerns in the computer context, given the vast amount of data they can store." *See United States v. Adjani*, 452 F.3d 1140, 1149 (9th Cir. 2006). However, in approving a warrant authorizing search and seizure of an entire computer in an extortion case, the *Adjani* court also expressed the countervailing

8

1    concern that requiring a "pinpointed computer search, restricting the search to an

2    email program or to specific search terms, would likely have failed to cast a

3    sufficiently wide net to capture the evidence sought." *Id.* at 1149–50.

4         Similarly, in *United States v. Flores*, No. 14-50027, slip. op. (9th Cir. Sep.

5    23, 2015), the Ninth Circuit recently approved the search and seizure of 11,000

6    pages of data in defendant's Facebook account in a drug trafficking case, where

7    only approximately 100 pages were ultimately found to be truly responsive to the

8    warrant. *Id.* at 29 (citing *Adjani*, 452 F.3d at 1149–50) ("'Over-seizing' is an

9    accepted reality in electronic searching because '[t]here is no way to be sure

10   exactly what an electronic file contains without somehow examining its contents.'"

11   (quoting *Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176–77 (9th Cir.

12   2010) (en banc))). In *United States v. Nazemzadeh*, 2013 WL 554054 (S.D. Cal.

13   Feb. 12, 2013), Judge Lorenz approved a warrant authorizing seizure of an entire

14   e-mail server where the affidavit explained the practical limitations, including the

15   length of time required, preventing an on-site search of the e-mail account. *Id.* at 4.

16   And in *United States v. Garcia-Alvarez*, 2015 WL 777411 (S.D. Cal. Feb. 24,

17   2015), Judge Miller was skeptical that a search confined to "recent data" on a cell

18   phone would have been appropriate, given that the government had no evidence at

19   that point that the alleged smuggling was only recent. *Id.* at *4.

20        In the present case, like in *Nazemzadeh*, the affidavit explains that whole

9

1    copies of the cell phones were required because the nature of cell phone memory

2    storage sometimes requires manual, as well as forensic, review, which can take a

3    greater amount of time. ECF No. 34-1 at 6–7. Indeed, as Judge Lorenz noted, "if

4    the search took hours or days, the intrusion would continue for that entire period,

5    compromising the Fourth Amendment value of making police searches as brief and

6    non-intrusive as possible." 2015 WL 777441, at *4. Thus, the Court declines to

7    find the warrant insufficiently particularized.

8    **b.   Breadth**

9    Hernandez makes two overbreadth arguments. She argues that (1) the

10   warrant was broader than the probable cause upon which it was based; and (2)

11   there was no probable cause to support the warrant. 2nd Def. Mot. 9–12.

12   First, Hernandez relies on *United States v. Bridges*, 344 F.3d 1010 (9th Cir.

13   2003) for her argument that warrant's language is overbroad. 2nd Def. Mot. 9. She

14   suggests that the warrant in this case is analogous to that in *Bridges*, where the list

15   of items to be searched was "so expansive" that it amounted to "a comprehensive

16   laundry list of sundry goods and inventory that one would readily expect to

17   discover in any small or medium-sized business in the United States." *Id.* at 1017.

18   As an initial matter, the Court observes that while the Ninth Circuit

19   criticized the "including but not limited to" language used in the warrant in that

20   case and also present in this case, the *Bridges* court's overriding concern was that

10

1   the warrant there failed to state at all what criminal activity was being investigated

2   by the IRS, an issue not present here. *Id.* at 1018. But more importantly, while the

3   warrant in the present case does include "including but not limited to" and "tending

4   to" language that widens the possible scope of any search, the Ninth Circuit has

5   held that "catch-all phrases" in warrants are permitted where they exist in a

6   "context [that] adequately limits the scope of the search." *United States v. Reeves*,

7   210 F.3d 1041, 1046 (9th Cir. 2000).[3]

8        Here, the "including but not limited to" and "tending to" language is

9   similarly limited by the context of searching for information related to "smuggling

10  controlled substances from Mexico to the United States," and to establishing the

11  identity of the phone's owner and the creator of the content on the phone. *See* ECF

12  No. 34-1. Thus, the warrant was not more general than the probable cause upon

13

14  ----

[3] *See United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008) (holding that the words "including, but not limited to" and "tend to" did not render a warrant insufficiently particular where the warrant authorized a search only of the "[b]unk space, cupboard, drawer, and two storage spaces" which the crew had told the agents belonged to the defendant); *Garcia-Alvarez*, 2015 WL 777411, at *3 (approving a warrant for a cellphone search with "including but limited to" and "tending to" language where that language was limited to searching for "information relevant to drug trafficking and identifying Defendant's communications, movements, and co-conspirators"); *see also Flores*, No. 14-50027, slip. op. 29 n.21 (9th Cir. Sep. 23, 2015) (approving a warrant with "tending to" language where that language was limited to searching for evidence "tending to show narcotics trafficking"); *Reeves*, 210 F.3d at 1046 (approving use of the words "may include, but is not limited to" and "other items" where those words existed in the context of authorization for a search for "evidence of the possession, manufacture, and delivery of the controlled substance methamphetamine"); *United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986) (approving a warrant authorizing the seizure of "records, notes [and] documents indicating [the defendant's] involvement and control of prostitution activity including *but not limited to*, photographs, handwritten notes, ledger books," because the warrant "effectively tells the officers to seize only items indicating prostitution activity").

which it was based.

Second, Hernandez argues that there was no probable cause to support a warrant searching the cell phone. 2nd Def. Mot. 12. Probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of circumstances." *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007). Reasonableness is the hallmark of the probable cause inquiry. *Id.* at 1077 ("In this inquiry, common sense is key. In deciding whether there is probable cause to issue a search warrant, a judicial officer must weigh 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* at 1077–78.).

Here, Hernandez was arrested for attempting to import 2.96 kilograms of methamphetamine in a load vehicle. In support of the search for the target telephone, the affiant, Special Agent Alvin Medina, relied on his experience investigating drug smuggling organizations. *See* ECF No. 34-1 at 5–6. In his experience, drug smugglers work in concert with co-conspirators and are in telephonic contact with co-conspirators immediately before and after the crossing of a load vehicle. At the time of her arrest, agents seized the target telephone from Hernandez's person. Based on the statement of facts and his experience, Agent Medina opined that Hernandez was in an on-going conspiracy to import drugs and likely used the target telephone to coordinate with co-conspirators regarding the

12

1   importation and delivery of the drugs. *See id.* at 6. Given the facts and the

2   experience of Agent Medina, there was a fair probability that evidence of drug

3   trafficking would be found within the memory of the target telephone.

4   **c.      Search Protocol**

5   Finally, Hernandez suggests that the warrant is invalid because "the

6   government should have provided the court methods and procedures it would use

7   to look in limited areas of the phone for limited information." 2nd Def. Mot. 8, 12.

8   However, the Ninth Circuit has declined to specify a mandatory search protocol for

9   electronic warrant-based searches. *See Garcia-Alvarez*, 2015 WL 777411 at *4;

10   *Nazemzadeh*, 2013 WL 544054, at *5 ("Defendant's contention that a search

11   protocol was required is contrary to the law of the Ninth Circuit."). While the

12   Ninth Circuit has "look[ed] favorably upon the inclusion of a search protocol . . .

13   its absence is not fatal." *See United States v. Hill*, 449 F.3d 966 (9th Cir. 2006)

14   (declining to require a search protocol for a computer in a child pornography case);

15   *see also United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013) (declining to

16   require a search protocol for the search and seizure of a defendant's computer

17   system and all of his digital storage devices in a child pornography case);

18   *Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) (en banc) (per

19   curiam) (declining to adopt Judge Kozinski's concurring opinion laying out

20   "guidance" for digital searches). Thus, the Court declines to find the absence of a

13

search protocol here grounds for finding the warrant invalid.

## CONCLUSION

For the foregoing reasons, Hernandez's Motions to Suppress, ECF Nos. 31, 36, are hereby **DENIED**.

**IT IS SO ORDERED.**

Dated:  February 8, 2016

Hon. Gonzalo P. Curiel
United States District Judge

14